```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  SOUTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION
```

PHILLIP RAY HARKLESS          :
(AIS #266580)
                              :
    Plaintiff,
                              :
vs.                                CIVIL ACTION 11-00570-CB-M
                              :
DEBORAH TONEY, et al.,
                              :
    Defendants.

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. (Doc. 1). This action has been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). After consideration of the pleadings, and for the reasons set forth below, it is recommended that this action be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

I. STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing his complaint under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis either in law or in fact." Neitzke v.

1

Williams, 490 U.S. 319, 325 (1989).  A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, or the claim seeks to enforce a right that clearly does not exist.[1]  Id. at 327.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.  Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 555, 557 (second brackets in original).  The court will treat these factual allegations as true.  Iqbal, 129 S. Ct. at 1949.  However, the court will not accept as true

---

[1] The frivolity and the failure-to-state-a-claim analysis contained in Neitzke was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996.  See Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001). However, dismissal is now mandatory under § 1915(e)(2)(B).  Id.

"[c]onclusory allegations, unwarranted deductions of facts[,] legal conclusions masquerading as facts," Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004), or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" Iqbal, 129 S. Ct. at 1949.  Furthermore, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted.  Jones v. Bock, 549 U.S. 199, 215 (2007).

When considering a *pro se* litigant's allegations, a court gives them a liberal construction holding them to a less stringent standard than those of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a court, does not have "license ... to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action."  GJR Invs. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by* Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868.  Further, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."  Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

## II. DISCUSSION

Plaintiff is currently incarcerated at Fountain Correctional Facility ("Fountain") in Atmore, Alabama, having been convicted of

manslaughter and sentenced to fourteen years in prison.  (Doc. 1 at 6).  Plaintiff filed his complaint in this action on October 4, 2011, while he was incarcerated at the Atmore Work Release Center ("AWRC") in Atmore, Alabama.

In his complaint, Plaintiff alleges that: (1) while incarcerated at the AWRC, Defendants, Warden Deborah Toney, "Dr. Lopez," and "Nurse Gaston" violated his constitutional right to adequate medical care by denying him an MRI for his back; (2) while previously incarcerated at Easterling Correctional Facility, he was denied distilled water for his "CPAP" machine, which he uses to treat sleep apnea; and (3) Defendant Warden Toney's plan to transfer him from the AWRC to another facility violated his constitutional rights.  (Id. at 4-5, 8-9).  Plaintiff seeks compensatory damages and injunctive relief.  (Id. at 7).

With regard to his claim against Defendants Lopez, Gaston, and Toney for denying him an MRI, Plaintiff alleges that he arrived at the AWRC on May 11, 2011, at which time he informed the medical staff of his medical conditions, which included the problems with his back.  (Doc. 1 at 4, 8).  Plaintiff states that, prior to his incarceration in 2009, he had been scheduled to have back surgery based on the results of a previous MRI taken in 2008.  (Id. at 8).  Plaintiff alleges that he asked Defendants for an MRI, but he never received one.  (Id. at 8-9).

With respect to Dr. Lopez, Plaintiff alleges that he is a prison physician who works at both Fountain and the AWRC.  (Id. at 5, 8-9).  According to Plaintiff, at the time that he filed his complaint on October 4, 2011, Dr. Lopez was treating him for his back condition and was in the process of obtaining Plaintiff's medical records from his "free-world" physician, Dr. Robert Story, and from the East Alabama Medical Center.  (Id. at 8).  Dr. Lopez told Plaintiff that, once he received the records, he planned to "do [a] test" to determine whether surgery was necessary.  (Id. at 8).  If surgery proved to be necessary, Dr. Lopez planned to have Plaintiff transferred to Fountain for further treatment.  (Id. at 9).

Plaintiff further alleges that Defendant, Nurse Gaston, told him that he "was not going to schedule [Plaintiff] an MRI because it cost[s] too much money and the state is in a crisis."  (Id. at 8).  Last, Plaintiff alleges that he spoke with Defendant, Warden Toney, about getting an MRI, and Defendant Toney showed no concern and informed him that she was planning to transfer him to another facility, which, Plaintiff alleges, would only delay treatment of his medical conditions.  (Id. at 8-9).

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  "The Eighth Amendment's proscription of cruel and unusual punishments prohibits

prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

Sims, 25 F.3d at 983 (citing Hudson v. McMillian, 503 U.S. 1, 8 (1992)). To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)). "In either of these situations, the medical need must be one that, if left unattended,

6

pos[es] a substantial risk of serious harm." Id. (internal quotation marks and citation omitted).

In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. Farrow, 320 F.3d at 1243. "Deliberate indifference" entails more than mere negligence. Estelle, 429 U.S. at 106; Farmer v. Brennan, 511 U.S. 825, 835 (1994).

> The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety*; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting Farmer and Estelle, this Court explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46 (emphasis in original).

"Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton

7

infliction of pain." Hill, 40 F.3d at 1187 (internal citations and quotation marks omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." Id.

> The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. Gaudreault, 923 F.2d at 208; Monmouth County, 834 F.2d at 347. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." Id. An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "[t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

Hill, 40 F.3d at 1188-89 (emphasis in original) (footnotes omitted).

### A. No Allegations of Deliberate Indifference Related to Denial of MRI.

For purposes of this analysis, the Court assumes that Plaintiff's back condition constitutes an objectively seriously medical need. The Court considers, instead, whether Plaintiff has

8

alleged facts which, if proved, could establish the second, subjective element of Plaintiff's claim -- deliberate indifference to his serious medical need.

As discussed above, Plaintiff arrived at the AWRC on May 11, 2011, and was incarcerated there for seven months. (Docs. 1 at 4, 6). On or about December 5, 2011, Plaintiff transferred from the AWRC to the Mobile Work Center. (Doc. 6). He transferred to Fountain on or about January 6, 2012, where he remains incarcerated. (Doc. 8).

Plaintiff's own allegations in this action establish that he was being treated by the medical staff at the AWRC for a non-life-threatening back problem and that Dr. Lopez was taking steps to determine the proper diagnosis and necessary treatment for Plaintiff at the time that he was transferred to another facility. Under the circumstances alleged, the mere fact that Plaintiff did not receive the MRI that he wanted in the timeframe that he wanted does not support a finding that Defendants were deliberately indifferent to his serious medical need. See Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995)(whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (citing Estelle, 429 U.S. at 107); Harris v. Thigpen,

941 F.2d 1495, 1505 (11th Cir. 1991) (a difference in medical opinion between the prison's medical staff and the inmate about the inmate's diagnosis or course of treatment will not support a claim of cruel and unusual punishment); Jackson v. Benjamin, 2011 WL 1789992, *7 (S.D. Ala. 2011) ("'It is well-established that a difference in opinion or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs.'") (citations omitted); Jackson v. Jackson, 2012 WL 265585, *2 (11th Cir. 2012) (unpublished) ("That Jackson felt he should have had surgery earlier than he did is insufficient to support a deliberate indifference claim.").

"Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris, 941 F.2d at 1505 (citations omitted). Plaintiff's complaint in this action alleges no facts or circumstances which, if proved, would establish that, by denying Plaintiff an MRI during the seven months that he was incarcerated at the AWRC, Defendants were deliberately indifferent to a substantial risk of serious harm to him. Therefore, Plaintiff's allegations against Defendants based upon this alleged deprivation fail to state a claim upon which relief can be granted.

B. No Allegations Against Defendants Related to CPAP Machine.

Plaintiff also complains that, while previously incarcerated at Easterling Correctional Facility, he was denied distilled water for his "CPAP" machine, which he uses to treat severe sleep apnea. (Doc. 1 at 4, 8-9). Plaintiff does not allege, however, that any of the Defendants in this action failed to provide him distilled water for his CPAP machine while he was incarcerated at the AWRC.[2] (Id.). Therefore, this allegation fails to state a claim against these Defendants upon which relief could be granted. See Martinez v. Minnis, 257 Fed. Appx. 261, 266-67 (11th Cir. 2007) (unpublished)[3] (where plaintiff's "complaint made *no* allegations whatsoever against [defendants],... the district court correctly dismissed them from the case.") (emphasis in original); Bailey v. Hughes, 2011 WL 4542721, *22 (M.D. Ala. 2011) ("Where a plaintiff sues a defendant and makes no allegations against that defendant, there is no prima facie case.").

C. No Constitutional Right to Remain at a Particular Institution.

When Plaintiff filed his complaint on October 4, 2011, he claimed that a transfer to another institution by Defendant Toney

---

[2] To the contrary, Plaintiff alleges that Defendant Gaston did provide him distilled water for his "CPAP" machine, and his infections got better. (Doc. 1 at 8).

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

would violate his constitutional rights because it would delay his MRI and because a new facility would be less equipped to handle his medical needs than the AWRC. (Doc. 1 at 8-9). Despite his objections, Plaintiff was transferred by Defendant Toney to the Mobile Work Center on December 5, 2011. (Doc. 6).

The law is settled that "inmates do not have a constitutional right to be housed at one facility or another." Wilkes v. Sightler, 2011 WL 1584329, *2 (S.D. Ga. 2011) (holding that inmate had no constitutional right to remain at a particular institution even where plaintiff alleged that the quality of medical services was better at the former facility than the one to which he had been transferred) (citing Meachum v. Fano, 427 U.S. 215, 224-25 (1976), and Montanye v. Haymes, 427 U.S. 236, 242-43 (1976)); see also Sanderson v. Owens, 2010 WL 3292661, *4 (S.D. Ga. 2010) (holding that inmate had no constitutional right to be transferred to a facility where he would have better access to "free world" medical care.). Accordingly, Plaintiff's allegations against Defendant Toney based upon the alleged deprivation caused by his transfer to another facility fail to state a claim upon which relief can be granted.

> D. Claim for Injunctive Relief Against Warden Toney is Moot.

Finally, in his complaint, Plaintiff seeks injunctive relief in the form of an order requiring Defendants Lopez, Gaston, and Toney to give him an MRI or surgery or grant him "medical leave" "to have

[his] own surgery and continue medical care/needs under [his] doctor, Dr. Robert Story." (Doc. 1 at 7). As stated previously, Plaintiff was transferred from the AWRC on December 5, 2011, and he is currently incarcerated at Fountain. (Docs. 6, 8). "The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."). Mann v. McNeil, 360 Fed. Appx. 31, 32 (11th Cir. 2010) (unpublished) (quoting Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007)); see also Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) ("This court has clearly stated the following: Absent class certification, an inmate's claim for injunctive and declaratory relief in a § 1983 action fails to present a case or controversy once the inmate has been transferred.").

Because a claim for injunctive relief is a prospective remedy, "[w]hen the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." Adler v. Duval County School Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). Inasmuch as Plaintiff is no longer incarcerated at the AWRC, and there is no allegation that he will be returning to the AWRC, his claim for injunctive relief against Defendant, Warden Toney, is moot. However, because Plaintiff alleges that Defendants Lopez and Gaston are employed as part of the medical staff at Fountain, where Plaintiff is currently

incarcerated, Plaintiff's claims against Lopez and Gaston are not rendered moot by his transfer.  Accordingly, for the reasons stated, Plaintiff's claim for injunctive relief against Defendant Toney is due to be dismissed without prejudice.

## CONCLUSION

Based on the foregoing, the Court concludes that § 1983 relief could not be granted under any set of facts that could be proved consistent with Plaintiff's allegations against these Defendants. Accordingly, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.  <u>If Plaintiff wishes to file an amended complaint to correct the deficiencies described above, he must submit an amended complaint with any objections that he files to this report and recommendation.</u>

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **Transcript (applicable Where Proceedings Tape Recorded).** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 16th day of March, 2012.

                                   s/BERT W. MILLING, JR.
                                   UNITED STATES MAGISTRATE JUDGE

---

4 Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  <u>Fed. R. Civ. P.</u> 72(b)(2).